UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIELLE PURSELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-01019-AGF |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Danielle Pursell was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons stated below, the decision will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 19-1), as supplemented by Defendant (ECF No. 20-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on August 17, 1973, protectively filed her application for benefits on December 29, 2018. She alleged disability beginning on August 9, 2016, due to fibromyalgia, irritable bowel syndrome, osteoarthritis in lumbar spine/stenosis, chronic fatigue, widespread muscle and joint pain, memory difficulties, severe muscle weakness and tenderness, always being cold, depression, and anxiety when interacting with other people

Tr. 303. Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on September 23, 2020. Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. By decision dated November 9, 2020, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, fibromyalgia, irritable bowel syndrome, migraines, mood disorder, and anxiety. Tr. 10-36. However, the ALJ found that none of Plaintiff's impairments or combinations of impairments met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of "sedentary" work, as defined by the Commissioner's regulations, in that:

> she can frequently reach, handle, finger and feel; never climb ropes, ladders, or scaffolds; can occasionally balance (as defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations); occasionally stoop, kneel, crouch, and crawl; no concentrated exposure to extreme cold and vibration; and no exposure to unprotected heights or hazardous machinery. The claimant is able to learn, remember, and carry out simple, routine tasks; is able to use reason and judgment to make simple, routine work-related decisions; is able to work at an appropriate and consistent pace while performing simple, routine tasks; is able to complete simple, routine tasks in a timely manner; is able to ignore or avoid distractions while performing simple, routine tasks; must have only minimal changes in job setting and duties; is able to sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; and is able to work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; can have no contact with the general public; and is able to work close to or occasionally with co-workers and supervisors without interrupting or distracting them while performing simple, routine tasks.

Tr. 19-20.

The ALJ next found that Plaintiff could perform certain unskilled sedentary jobs listed in the Dictionary of Occupational Titles ("DOT") (addresser, document preparer, and press clippings cutter paster), which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on June 17, 2021. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that: (1) the RFC is not supported by substantial evidence; (2) the ALJ did not properly consider Plaintiff's fibromyalgia; (3) the ALJ failed to properly consider the medical opinions of Plaintiff's primary care physician, David K. Bean, D.O.; and (4) the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain. Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits or, alternatively, further evaluation.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as

3

adequate to support a conclusion." *Id*. (citations omitted).  A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with

4

others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**RFC Evaluation**

A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations."  20 C.F.R. § 404.1545(a).  The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).

Plaintiff complains that the ALJ's decision does not include sufficient narrative

5

discussion of how the evidence supported the RFC. However, a review of the ALJ's decision plainly demonstrates that the ALJ properly formulated Plaintiff's RFC only after evaluating Plaintiff's subjective symptoms and extensively discussing the relevant evidence, including her testimony, the medical evidence, and her daily activities. Moreover, the ALJ explained why she excluded RFC limitations, such as off-task behavior, because they were not supported by the record. *See* Tr. 26-27. Although this Court must review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations, [it] does not require an ALJ to mechanically list and reject every possible limitation." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018).

After consideration of all of the above-noted evidence, the ALJ concluded that Plaintiff retained the capacity to perform less than the full range sedentary work as defined in the applicable regulations, with significant modifications tailored to Plaintiff's credible non-exertional limitations. The ALJ's formulation was supported by substantial evidence.

**Consideration of Plaintiff's Fibromyalgia**

"Fibromyalgia is an elusive diagnosis; its cause or causes are unknown, there's no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009) (cleaned up and citation omitted). Particularly because fibromyalgia does not always manifest itself in objective test results, "an ALJ cannot rely solely on objective evidence to adjudicate a claim for benefits but instead must evaluate all evidence—including a claimant's subjective evidence—in its determination." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021). But while fibromyalgia has the potential to be disabling, *Forehand*, 364 F.3d at 987, "not every

6

diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022) (citation omitted).

Plaintiff contends that the ALJ improperly limited her consideration of Plaintiff's fibromyalgia to a discussion of the objective medical evidence, such as physical and mental examination findings, which do not necessarily reflect true fibromyalgia symptoms. However, a review of the ALJ's decision demonstrates that it is not so limited.

Although the ALJ considered Plaintiff's relatively normal physical and mental examination findings over the relevant period, the ALJ further relied on Plaintiff's statements on agency forms and her hearing testimony regarding her fibromyalgia-related symptoms and pain. The ALJ acknowledged the evidence highlighted by Plaintiff, including that Plaintiff exhibited 18 out of 18 fibromyalgia tender points, was diagnosed with fibromyalgia, and had bilateral knee crepitus with limited range of motion and limited external rotation of the hips. *See* Tr. 22-24. The ALJ thus included several limitations in the RFC to account for Plaintiff's fibromyalgia-related symptoms, including limitations to sedentary work (which requires lifting no more than 10 pounds at a time, *see* 20 C.F.R. § 404.1567(a)), only occasional balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no concentrated exposure to cold (which Plaintiff alleged worsened her symptoms) and vibration; and no exposure to unprotected heights or hazardous machinery.

The ALJ likewise recounted in detail the evidence supporting, to some extent, Plaintiff's complaints of mental limitations and accounted for these in the RFC by limiting Plaintiff to making simple, routine work-related decisions; performing simple, routine tasks with only minimal changes in job setting and duties; having no contact with the general

7

public and working close to or only occasionally with coworkers and supervisors.

However, the ALJ expressly noted that Plaintiff's reported daily activities (discussed further below), her relatively conservative treatment history, and her reported improvement with medication, particularly after medication was adjusted due to side effects—in combination with the lack of objective medical evidence—did not support such significant fibromyalgia-related limitations as to be disabling.   The ALJ thus did not substantially err in her consideration of Plaintiff's fibromyalgia.  *See Grindley*, 9 F.4th at 628 (holding that where the ALJ did not rely solely on "objective evidence" in assessing a claimant's fibromyalgia symptoms but also referenced the claimant's testimony on her daily activities and allegations of pain, the claimant's "objective-evidence challenge" was without merit).

**Medical Opinion Evidence and Credibility Determination**

In her final two arguments, Plaintiff contends that the ALJ failed to properly evaluate both the medical opinions of Plaintiff's primary care physician, Dr. Bean, and Plaintiff's own subjective complaints of pain, in formulating the RFC.   Both contentions are without merit.

Although the RFC is a medical question and must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley*, 829 F.3d at 932.   Instead, the RFC must be determined by the ALJ based on all the relevant evidence.

The regulations applicable to Plaintiff's claim provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."   *See* 20 C.F.R. § 405.2520c(a) (2017) (applying to claims filed

8

March 27, 2017, or later).  "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted).

When considering a claimant's self-reported symptoms and limitations, the ALJ must evaluate whether the claimant's subjective statements are consistent with and supported by the record as a whole.  20 C.F.R. § 404.1529(c); SSR 16-3p.  "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.  *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).  When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p; *Halverson*, 600 F.3d at 931; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984).  Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints for good reason, the decision should be upheld.  *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

The ALJ properly evaluated both Dr. Bean's medical opinions and Plaintiff's subjective complaints here by discussing all of the relevant medical evidence, expressly considering the factors relevant to credibility determinations, and providing good reasons for partially discounting the more severe limitations alleged.

Dr. Bean's three opinions in this case (issued in November of 2017, December of

9

2018, and May of 2020) were each completed on short forms in which the physician checked boxes and filled in blanks.   Dr. Bean opined in checkbox and fill-in-the-blank form that Plaintiff needed to shift positions at will between sitting, standing, and walking every 15 minutes; required breaks every 25 minutes; would be off task for 25% or more of the day; could not tolerate even low stress work; and would miss four days of work per month.   Tr. 509-512; 1135.   He also checked boxes indicating that Plaintiff could not manage benefits in her own best interest and had marked limitations in her ability to make judgments on complex work-related decisions; moderate limitations in carrying out even simple instructions and understanding and remembering complex instructions; and mild limitations in understanding and remembering simple instructions and making judgments on simple work-related decisions.   Tr. 505-506.

    As the Eighth Circuit recently held in the context of another fibromyalgia social security claim, a medical opinion "rendered on a check-box and fill-in the blank form," such as Dr. Bean's, is "entitled to relatively little evidentiary value on its face" and may be properly discounted as conclusory.   *See Swarthout*, 35 F.4th at 611.   Further, where, as here, the ALJ has cited inconsistencies between the medical opinion and the provider's own treatment notes and daily activities, the opinion may appropriately be given little weight.

    The ALJ here, as in *Swarthout*, noted that Dr. Bean's own treatment notes and other objective medical evidence in the record showed mostly normal physical examination findings, including normal strength, sensation, and gait.   *See id.* (noting that, notwithstanding a claimant's fibromyalgia and chronic fatigue diagnoses, the objective medical evidence showing normal physical examination findings, including normal strength,

10

reflexes, and gait, contradicted a medical provider's checklist opinion indicating disabling limitations). As the Eighth Circuit held, "that working may cause discomfort does not dictate a finding of disability, and 'not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled.'" *Id.* (citing *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011)).

Likewise, the medical record contradicted the provider's checklist opinion indicating disabling mental limitations. For example, several treatment notes from Dr. Bean and other providers indicated that Plaintiff was functioning well on medication such as Adderall and Cymbalta and that, on these medications, Plaintiffs reported improved mood, brighter affect, and improved concentration. *See* Tr. 22-24 (discussing reports of improved mental symptoms with medication). Further, as the ALJ explained, despite alleging disabling mental limitations dating back to August 9, 2016, the first record evidence of any psychiatric treatment for Plaintiff was in February of 2017. And Plaintiff's mental status examination at that appointment reflected that she was dysphoric but not tearful and, aside from a restricted affect and halting speech, had a normal mental status, including logical sequential and goal-directed thought processes, lack of suicidal or homicidal ideation, normal memory and concentration, and good insight and judgment. Tr. 22-23.

Plaintiff's mental health treatment thereafter was limited to medication, on which she showed improvement. Results from a neuropsychological assessment conducted in February of 2019 were mostly normal, although some areas were "inconclusive" due to Plaintiff not putting forth full effort. Tr. at 23-24. Further, Plaintiff apparently did not follow through on the neuropsychologist's recommendation for psychotherapy. Tr. 24; *see*

11

*also* Tr. 22-27 (discussing the relevant portions of the medical record).   The ALJ thus reasonably concluded that the longitudinal medical evidence supported mental limitations to the extent reflected in the RFC but not such severe limitations as to be disabling.

Finally, as in *Swarthout*, the ALJ here noted that Plaintiff's daily activities undermined both Dr. Bean's opinions and Plaintiff's subjective complaints that Plaintiff suffered from disabling physical and mental limitations.   The ALJ summarized Plaintiff's testimony regarding her daily activities and subjective allegations of her limitations and found that Plaintiff's statements about the intensity, persistence, and limiting effects only partially consistent with the evidence of record.   The ALJ also acknowledged Plaintiff's reported symptoms and went on to weigh these allegations against the evidence of record as required by 20 C.F.R. § 404.1529(c)(3).

As the ALJ noted, Plaintiff's function reports and reports to physicians indicated that on a typical day, she let her dog out; made sure her 13-year-old daughter was up for school; assisted with household chores such as laundry, dishes, sweeping, and cooking; drove for short trips; could go out alone; attended her daughter's volleyball tournaments and school events and talked with other parents on a biweekly or weekly basis; regularly attended doctor's appointments; read daily; was involved in recreational activities; and was able to pay her own bills, count change, and make shopping lists without forgetting items.

The ALJ concluded that such activities showed that Plaintiff could do "at least less than a full range of sedentary work with manipulative, postural, environmental, and mental limitations." Tr. 25.   Such a conclusion was not substantially erroneous.   *See Swarthout*, 35 F.4th 612 (affirming the ALJ's conclusion that a claimant's daily activities, including

"caring for personal hygiene, managing medications, preparing simple meals, stretching and performing gentle exercises, watching television, reading the newspaper, going for short walks outside, riding a bike, driving, handling money, doing some laundry, and doing some household chores in short increments" provided evidence that the claimant was not as severely limited due to fibromyalgia as she had alleged). Such daily activities, while not dispositive, are a proper "factor to consider in evaluating subjective complaints of pain." *Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996).

In sum, upon review, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 2nd day of August, 2022.